David N. Chandler, Sr.   SBN 60780
David N. Chandler, Jr.   SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE:                          CASE No. 14-31828 HLB

CHUCK H. UTZMAN and             CHAPTER 11
ANNA K. UTZMAN,

_____Debtors._____/   DEBTORS' DISCLOSURE STATEMENT

A.  <u>INTRODUCTION.</u>

Chuck H. Utzman and Anna K. Utzman, hereafter referred to as the "Debtors", submit this Disclosure Statement to all of their known creditors and interest holders entitled to same pursuant to section 1125 of the United States Bankruptcy Code ll U.S.C. section 101, et seq. ("the Bankruptcy Code").   The purpose of this Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter ll Plan of Reorganization(the "Plan") described below.   The Debtors' Chapter ll Plan of Reorganization has been filed with this Court.

NO REPRESENTATIONS CONCERNING THE DEBTORS (INCLUDING THE VALUE OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS)INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.  Except as otherwise expressly stated, the portions of this Disclosure Statement describing the Debtors and the Plan have been prepared from

information obtained from the Debtors.

Under the Plan, all Secured claims, to the extent allowed as secured claims pursuant to 11 U.S.C. Section 506, and to the extent the validity of the security interest is determined by the Court and not otherwise avoidable, will be paid. Unsecured claims shall be paid on a pro rata basis, quarterly, from a disbursing account which will be paid into monthly by the debtor, in the amount of $500.00 per month. The dividend to allowed general unsecured claims will be approximately 10% based upon Debtor's Schedule F, although it could be less depending on whether there are allowed unsecured claims following determination(s) of secured status.

A Chapter 7 liquidation could take up to three years before distribution is made, if any, and additional Administrative expenses would be incurred. Tax consequences of liquidation, expenses of sale, professional fees and trustee's fees are administrative expenses in a Chapter 7 liquidation and paid before pre-petition claims are paid. Administrative expenses of Chapter 11 are also paid prior to payment of pre-petition claims. The dividend proposed by the Plan exceeds that available in the event of liquidation.

B. <u>FILING OF REORGANIZATION CASE</u>.

On December 23, 2014, the Debtors filed their petition pursuant to Chapter 11 of the Bankruptcy Code. Since that time the Debtors have remained in possession of their property as debtors in possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be sent to

the Debtors' counsel prior to the date set by the Court for the filing of such ballots.

D. <u>CONFIRMATION OF THE PLAN</u>.

1. <u>Solicitation of Acceptance</u>.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125 of the bankruptcy code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the Bankruptcy Code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

2. <u>Persons Entitled to Vote on Plan.</u>

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of Section 1124 of the Bankruptcy Code, this includes creditors who, under the Plan, will receive less than payment in full of their creditor's claims.

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtors, as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot form which you

receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should review the Debtors' schedules which are on file in the Bankruptcy Court. The Clerk of the Bankruptcy Court will not provide this information by telephone.

3.  <u>Hearing on Confirmation of the Plan.</u>

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation of the Plan are satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

4.  <u>Acceptance Necessary to Confirm Plan.</u>

At the scheduled hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired Class. Under Section 1125 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interest of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

5.  <u>Confirmation of the Plan Without Necessary Acceptance.</u>

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes.

II

A.  DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND.

The Debtors' financial difficulties were caused by a combination of a reduction in Mr. Utzman's consulting income, the downturn of the real estate market, the tightening of lending markets and a resulting inability to modify or refinance mortgage claims.  The Debtors are in the process of completing a construction project in Mill Valley, California 94941 on two separate but contiguous parcels:  APN: 027-252-51, the Debtors' residence, also described as 169 Rose (hereinafter the "Improved Parcel"), and APN: 027-252-52 (hereinafter the "Unimproved Parcel").  Many of the Debtors' financial difficulties relate to the construction project, and this Chapter 11 case is an important step in its successful completion, a successful reorganization of the Debtors' affairs and payment of creditor's claims to the extent reasonably possible.

The Debtors are 75 and 74 years old, respectively.  Mr. Utzman is a consulting engineer and works relative to residential construction projects.  Anna Utzman is a homemaker and also manages the rental unit in the Improved Parcel.

The Debtors acquired two vacant lots in 1994 and 2004, and the project started in or around 2005.  The project began with Planning Department approval of construction at the Improved Parcel on a

10,000 s.f. lot with an adjusted lot-line and sewer traversing the Unimproved Parcel. Initially, the project was funded directly by the Debtors from income and other sources readily available.

When the Debtors obtained a construction loan for the Improved Parcel in 2007, the lender, SunTrust Mortgage, Inc. (hereinafter "SunTrust"), would not loan the full amount requested. The Debtors' Loan Broker assured them that he had access to sufficient additional funding when it was needed. The Debtors relied on the assurances and proceeded with construction. The Debtors continued to fund the project from the SunTrust construction loan supplemented by their income and other assets. By the end of 2008, all available funds were exhausted and no additional financing was available. SunTrust agreed to consider a small loan increase and extension to allow the completion and sale of the Improved Parcel.

During discussions with SunTrust, it was discovered that the Title Company (Stewart Title), inadvertently and in connection with closing of the construction loan, paid off the land-loan on the Unimproved Parcel instead of the Improved Parcel where the house was to be constructed. At SunTrust's insistence, Stewart Title then paid off the land-loan for the Improved Parcel as well as a lien from Golden State Lumber. After some negotiation, the Debtors agreed to a 10-year note secured by a Deed of Trust relative to the Unimproved Parcel in favor of Stewart Title for the additional funds expended.

With the downturn in residential construction in 2008, Mr. Utzman's income dropped by about 60%. Business slowly improved, allowing the Debtors to complete a majority of the construction on the Improved Parcel, stage the property, and list it for sale. The

Debtors were not able to locate a buyer for the property so they continued to work on the project.

The post-2007 decline in the real estate market wiped out any equity in the Debtors' real estate holdings. There were still no refinance opportunities. Financing which was previously thought available was no longer available. As a consequence, the Debtors were rendered unable to obtain additional financing to complete the construction project. SunTrust refused to modify the terms of the construction loan on the Improved Parcel and threatened foreclosure. After 4-years of negotiation, SunTrust decided it was unwilling to extend any additional funds to the Debtors. In December 2014, SunTrust filed its Notice of Sale. Foreclosure of the Deed of Trust on the construction loan was imminent.

The Debtors' reduced levels of household income and increased expenses in attempting to complete the Improved Parcel resulted in a severe cash flow shortage and ultimately rendered the Debtors unable to service their debts, including unsecured debt incurred as a result of the project. Creditors related to the project, notably McKinley Elevator, Rafael Lumber, Golden State Lumber, Jackson's Hardware and MV Lumber and others filed suit against the Debtors and effectuated judgment liens by the recording of Abstracts of Judgments. Without sufficient income or financing, the construction project stalled, and the situation facing the Debtors progressively worsened. Under imminent threat of foreclosure by SunTrust of its security interest in the Improved Parcel, the Chapter 11 case was commenced.

Mr. Utzman's residential construction consulting income has recovered to about 3/4's of what it was before its decline in or

around 2008. In 2014, the second living unit at the Improved Parcel was fully rented. The Debtors continue to rent the second living unit at the Improved Parcel under both short-term and long-term rental agreements. Based on their current level of income, the Debtors expect that they will be able to make reasonable loan payments to SunTrust and Stewart Title. The Debtors also have the option of occupying the second living unit at the Improved Parcel and renting the main unit to generate additional income. The Debtors currently occupy the main living unit at the Improved Parcel notwithstanding that the project is not yet complete.

An exclusive easement or conveyance via lot line adjustment for purposes of constructing a garage or other structure for access and parking at the Unimproved Parcel is vital to the development and potential sale of that Parcel. Geographic contours, the physical location of the sewer line, and the path of the public street otherwise will prohibit – as a practical matter – parking anywhere else on the Unimproved Parcel given the City of Mill Valley's parking requirements for a new home there.

The Conditions of Approval and the Building Permit for the Improved Parcel showed a lot-line adjustment from a 17,000 s.f lot size to 10,000 s.f. and the house was sited accordingly. A building's setbacks in Mill Valley are based on the lot size and, as constructed, the house on the Improved Parcel is too close to the rear property-line for a 17,000 s.f. lot. As such, the size of the Improved Parcel's lot needs to be reduced in order to obtain the requisite approval (or a variance sought).

The approved drawings which were provided to SunTrust as a part of the construction loan documentation show both the lot-line

adjustment and the sewer traversing the Unimproved Parcel. The Building Department now requires that a sewer easement be recorded prior to re-issuance of the building permit and allowance of gas hook-up. Such utility services are required by law and for the use and enjoyment of the property.

Utilities for the Improved Parcel already traverse the Unimproved Parcel. However, there is currently no easement and Stewart Title or a successor could, conceivably, foreclose its security interest in the Unimproved Parcel and tear out the utilities for the Improved Parcel. It would be extremely onerous and expensive to instead traverse the utilities through the street, assuming that would even be possible given the City's current 5-year moratorium on digging in the newly paved street. Under these circumstances, a court may grant an easement by necessity to the Improved Parcel, however, the process would be protracted and expensive.

The only logical solution to the foregoing is that the Improved Parcel be provided with an easement for sewer/utilities and the Unimproved Parcel be provided an exclusive easement or conveyance via lot-line adjustment for parking and access. In order to accomplish this, each parcel will gain something and give something up. After these changes, the value of both parcels will be enhanced. In order for the solution to work, the liens of SunTrust and Stewart Title need to be modified by making such liens expressly subject to these changes in collateral.

A lot-line adjustment (or an exclusive easement) for parking and the utility easement must be surveyed, recorded, and shown on a set of revised "As-Built" drawings. Those revised documents must

then be provided to the City for review and approval in order

reactivate the building permit, complete the project, and obtain a

Certificate of Occupancy. SunTrust has steadfastly refused to

cooperate with the lot-line adjustment although, naturally, it has

no objection to the utilities easement. Stewart Title consistently

expressed a willingness to cooperate. The impasse with SunTrust

severely reduces the value and saleability of both Parcels.

Insurance for the Improved Parcel has been paid in full for

2015. The Unimproved Parcel currently has no public access and

insurance is not required or available.

The Debtors intend to fund the Chapter 11 Plan with Mr.

Utzman's consulting income and rents from the Improved Parcel.

Ongoing aspects of the project and tasks necessary for completion

are detailed in Exhibit B.

The Chapter 11 Plan entails a modification of SunTrust's claim

secured by the Improved Parcel. The loan will be restructured and

the Plan effectuates the conveyance via lot line adjustment or

exclusive easement for parking and access for the Unimproved Parcel.

A small portion of SunTrust's collateral will no longer be its

collateral because the lien will be made subject to the conveyance

via lot line adjustment or exclusive easement. However, the

easement for sewer/utilities under which the Improved Parcel is the

dominant tenement will become the collateral of SunTrust. On

balance, the security position of SunTrust is improved under the

Chapter 11 Plan.

The Chapter 11 Plan will also entail a modification of Stewart

Title's claim secured by the Unimproved Parcel. The loan will be

restructured and the Plan effectuates the easement for the sewer

under which the Improved Parcel is the dominant tenement. A small portion of Stewart Title's collateral will no longer be its collateral because the lien will be made subject to the easement for sewer/utilities. However, Stewart Title will gain collateral as a result of the transfer from the conveyance via lot line adjustment or exclusive easement for parking and access. On balance, the security position of Stewart Title is improved under the Chapter 11 Plan.

In all likelihood, the House will be sold to pay secured claims. In the meantime, one unit will be occupied by the Debtors and the other unit rented. The Unimproved Parcel will either be developed or sold.

There are a number of involuntary liens related to the project at the Improved Parcel which are likely unsecured within the meaning of 11 U.S.C. Section 506. Unsecured claims will be paid an amount at least equal to what would be paid in a hypothetical Chapter 7 liquidation. Administrative claims will be paid at the time of confirmation, as provided in the Code, or on such other terms as the Debtors and administrative claimant(s) agree.

The Chapter 11 Plan will pay all priority and administrative claims in full. The Plan will pay secured claims, as determined under Section 506 of the Code, in monthly payments of principal and interest. The Debtor believes the value of the Improved Parcel is $1,300,000 and the value of the Unimproved Parcel is $125,000. Unsecured creditors will be paid the aggregate sum of $30,000 in installments from post confirmation income. Alternatively, liquidation in Chapter 7 would likely net less to unsecured

creditors as set forth in the Liquidation Analysis attached hereto as Exhibit C.

III

A.  <u>PLAN OF REORGANIZATION.</u>

The following is a brief summary of the Plan, and is qualified in its entirety by the full text of the Plan itself.  The Plan, if confirmed, will be binding upon the Debtors, their creditors, and interest holders.  All creditors and interest holders are urged to read the Plan carefully.

The Plan divides claims and interests into 18 classes.  The classes consist of the following:

3.01.  <u>Class 1 Claims.</u>  Allowed claims entitled to priority pursuant to Section 507 of the Code.

3.02.  <u>Class 2 Claims.</u> Allowed secured claim of the County of Marin based upon the secured tax roll and secured by the Unimproved Parcel.

3.03.  <u>Class 3 Claims.</u>  Allowed claim of Stewart Title Guaranty Company secured by the Unimproved Parcel.

3.04.  <u>Class 4 Claims.</u>  Allowed secured claim of the County of Marin based upon the secured tax roll and secured by the Improved Parcel.

3.05.  <u>Class 5 Claims.</u>  Allowed claim of SunTrust Mortgage, Inc. secured by the Improved Parcel.

3.06.  <u>Class 6 Claims.</u>  Allowed claim of McKinley Elevator secured by mechanics lien(s) and/or judgment lien(s).

3.07.  <u>Class 7 Claims.</u>  Allowed claim of Rafael Lumber secured by a mechanics lien and/or judgment lien.

3.08.  <u>Class 8 Claims.</u>  Allowed claim of Golden State

Lumber secured by a mechanics lien and/or judgment lien.

3.09.    Class 9 Claims.    Allowed claim of Jackson's Hardware secured by a mechanics lien and/or judgment lien.

3.10.    Class 10 Claims.    Allowed claim of MV Lumber secured by a mechanics lien and/or judgment lien.

3.11.    Class 11 Claims.    Allowed claim of Rich Readimix Concrete, Inc. secured by a mechanics lien and/or judgment lien.

3.12.    Class 12 Claims.    Allowed claim of GE Moneybank secured by a judgment lien.

3.13.    Class 13 Claims.    Allowed claim of FIA Card Services, N.A. secured by a judgment lien.

3.14.    Class 14 Claims.    Allowed claim of Great Western Collection Bureau secured by a judgment lien.

3.15.    Class 15 Claims.    Allowed unsecured claims of McKinley Elevator, Rafael Lumber, Golden State Lumber, Jackson's Hardware, MV Lumber, Rich Readimix Concrete, Inc., GE Moneybank, FIA Card Services, N.A., Great Western Collection Bureau and any other party holding an involuntary lien related to construction and/or improvement of the Improved Parcel or the Unimproved Parcel to the extent the underlying claims are determined unsecured within the meaning of 11 U.S.C. Section 506.

3.16.    Class 16 Claims.    Allowed unsecured deficiency claims of Stewart Title Guaranty Company and/or SunTrust Mortgage, Inc. to the extent Class 3 and/or Class 5 claims are determined unsecured within the meaning of 11 U.S.C. Section 506.

3.17.    Class 17 Claims.    Allowed claims of creditors, other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims,

Class 7 Claims, Class 8 Claims, Class 9 Claims, Class 10 Claims, Class 11 Claims, Class 12 Claims, Class 13 Claims, Class 14 Claims, Class 15 Claims, Class 16 Claims and Class 18 Interests including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

3.18.    <u>Class 18 Interests</u>. Allowed interests of Debtor.

The Plan treats the classes as follows:

5.01.    <u>Class 1 Claims are impaired.</u>   Holders of allowed Class 1 Claims shall be paid in equal monthly installments of principal and interest or more at the statutory rate over sixty (60) consecutive months commencing on the effective date of the Plan.

5.02.    <u>Class 2 Claims are impaired.</u>   Holders of allowed Class 2 Claims which are not current on the effective date of the Plan shall be placed on a five year plan as provided by statute for the Unimproved Parcel.

a.   Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a).

5.03.    <u>Class 3 Claims are impaired.</u>   Holders of allowed Class 3 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a.   Other than as provided in subsection (c), such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject

to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b. To the extent Class 3 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 16 Claims.

c. The Debtors shall take the actions described in Sections 7.02 and 7.03, infra. The lien of Holders of allowed Class 3 Claims shall be subject to the easement described in Section 7.02. The exclusive easement or conveyance via lot line adjustment, more particularly described in Section 7.03, shall become the collateral of Holders of allowed Class 3 Claims. Confirmation of the Plan shall operate to consummate and give effect to the foregoing.

5.04. <u>Class 4 Claims are impaired.</u> Holders of allowed Class 4 Claims which are not current on the effective date of the Plan shall be placed on a five year plan as provided by statute for the Improved Parcel.

a. Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a)

5.05. <u>Class 5 Claims are impaired.</u> Holders of allowed Class 5 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a. Other than as provided in subsection (c), such

Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b.    To the extent Class 5 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 16 Claims.

c.    The Debtors shall take the actions described in Sections 7.02 and 7.03, infra.  The lien of Holders of allowed Class 5 Claims shall be subject to the exclusive easement or conveyance via lot line adjustment, more particularly described in Section 7.03.  The easement described in Section 7.02 shall become the collateral of Holders of allowed Class 5 Claims.  Confirmation of the Plan shall operate to consummate and give effect to the foregoing.

5.06.    <u>Class 6 Claims are impaired.</u>  Holders of allowed Class 6 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a.    Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b.    To the extent Class 6 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is

application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 15 Claims.

5.07. <u>Class 7 Claims are impaired.</u> Holders of allowed Class 7 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a. Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b. To the extent Class 7 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 15 Claims.

5.08. <u>Class 8 Claims are impaired.</u> Holders of allowed Class 8 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a. Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b. To the extent Class 8 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is

application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 15 Claims.

5.09. <u>Class 9 Claims are impaired.</u> Holders of allowed Class 9 Claims shall be paid an amount equal to such Holder's interest in the Debtors' interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a. Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b. To the extent Class 9 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there is application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 15 Claims.

5.10. <u>Class 10 Claims are impaired.</u> Holders of allowed Class 10 Claims shall be paid an amount equal to such Holder's interest in the Debtor's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization.

a. Such Holders shall retain the lien in the collateral to the extent Claims are secured within the meaning of 11 U.S.C. Section 506(a), subject to determination that the lien is void pursuant to 11 U.S.C. Section 506(d).

b. To the extent Class 10 Claims are determined unsecured within the meaning of 11 U.S.C. Section 506(a) and there

1  is application of 11 U.S.C. Section 506(d), the resulting allowed

2  unsecured claims shall be treated as Class 15 Claims.

3      5.11.   Class 11 Claims are impaired. Holders of allowed

4  Class 11 Claims shall be paid an amount equal to such Holder's

5  interest in the Debtor's interest in the collateral, to be

6  determined in accordance with Section 506 of the Bankruptcy Code, in

7  monthly installments of principal and interest at a Market Rate of

8  Interest based upon a thirty year amortization.

9          a.   Such Holders shall retain the lien in the collateral

10  to the extent Claims are secured within the meaning of 11 U.S.C.

11  Section 506(a), subject to determination that the lien is void

12  pursuant to 11 U.S.C. Section 506(d).

13          b.   To the extent Class 11 Claims are determined

14  unsecured within the meaning of 11 U.S.C. Section 506(a) and there

15  is application of 11 U.S.C. Section 506(d), the resulting allowed

16  unsecured claims shall be treated as Class 15 Claims.

17      5.12.   Class 12 Claims are impaired. Holders of allowed

18  Class 12 Claims shall be paid an amount equal to such Holder's

19  interest in the Debtor's interest in the collateral, to be

20  determined in accordance with Section 506 of the Bankruptcy Code, in

21  monthly installments of principal and interest at a Market Rate of

22  Interest based upon a thirty year amortization.

23          a.   Such Holders shall retain the lien in the collateral

24  to the extent Claims are secured within the meaning of 11 U.S.C.

25  Section 506(a), subject to determination that the lien is void

26  pursuant to 11 U.S.C. Section 506(d).

27          b.   To the extent Class 12 Claims are determined

28  unsecured within the meaning of 11 U.S.C. Section 506(a) and there

1  is application of 11 U.S.C. Section 506(d), the resulting allowed

2  unsecured claims shall be treated as Class 15 Claims.

3      5.13.    Class 13 Claims are impaired. Holders of allowed

4  Class 13 Claims shall be paid an amount equal to such Holder's

5  interest in the Debtor's interest in the collateral, to be

6  determined in accordance with Section 506 of the Bankruptcy Code, in

7  monthly installments of principal and interest at a Market Rate of

8  Interest based upon a thirty year amortization.

9          a.    Such Holders shall retain the lien in the collateral

10 to the extent Claims are secured within the meaning of 11 U.S.C.

11 Section 506(a), subject to determination that the lien is void

12 pursuant to 11 U.S.C. Section 506(d).

13         b.    To the extent Class 13 Claims are determined

14 unsecured within the meaning of 11 U.S.C. Section 506(a) and there

15 is application of 11 U.S.C. Section 506(d), the resulting allowed

16 unsecured claims shall be treated as Class 15 Claims.

17     5.14.    Class 14 Claims are impaired. Holders of allowed

18 Class 14 Claims shall be paid an amount equal to such Holder's

19 interest in the Debtor's interest in the collateral, to be

20 determined in accordance with Section 506 of the Bankruptcy Code, in

21 monthly installments of principal and interest at a Market Rate of

22 Interest based upon a thirty year amortization.

23         a.    Such Holders shall retain the lien in the collateral

24 to the extent Claims are secured within the meaning of 11 U.S.C.

25 Section 506(a), subject to determination that the lien is void

26 pursuant to 11 U.S.C. Section 506(d).

27         b.    To the extent Class 14 Claims are determined

28 unsecured within the meaning of 11 U.S.C. Section 506(a) and there

is application of 11 U.S.C. Section 506(d), the resulting allowed unsecured claims shall be treated as Class 15 Claims.

5.15.    Class 15 Claims are impaired.    Holders of allowed Class 15 Claims, Class 16 Claims and Class 17 Claims shall be paid the aggregate and total amount of $30,000 in 60 equal monthly installments which shall be distributed to Holders of the three Classes of Claims on a pro-rata basis each quarter.

5.16.    Class 16 Claims are impaired.    Holders of allowed Class 15 Claims, Class 16 Claims and Class 17 Claims shall be paid the aggregate and total amount of $30,000 in 60 equal monthly installments which shall be distributed to Holders of the three Classes of Claims on a pro-rata basis each quarter.

5.17.    Class 17 Claims are impaired.    Holders of allowed Class 15 Claims, Class 16 Claims and Class 17 Claims shall be paid the aggregate and total amount of $30,000 in 60 equal monthly installments which shall be distributed to Holders of the three Classes of Claims on a pro-rata basis each quarter.

5.18.    Class 18 Interests are impaired.    Holders of allowed Class 18 Interests shall retain exempt property and all rights to exemption.  Such holders shall retain their rights pursuant to 11 U.S.C. Sections 544, et seq. and 522(f) to avoid liens and transfers.  The property of the estate shall re-vest in the Debtor on the effective date of the Plan subject to the terms of the Plan.

5.19.    Election claim(s) under 11 U.S.C. § 1111(b)(2).    In the event that any Class of claims makes the election contemplated in Section 1111(b)(2) of the Code, in addition to the particular treatment provided for such Class, supra, the treatment afforded electing claims shall be as follows:

Creditors holding election claims shall retain their liens to the extent of their total allowed claim without application of 11 U.S.C. § 506(d). The payments contemplated in the relevant treatment section for an electing class, supra, shall continue beyond the term set forth therein as is necessary to pay the electing creditor(s) a sum equal to such creditor(s) total allowed claim(s). If the sum of payments contemplated in the relevant treatment section for the electing class, supra, equals or exceeds the electing creditor(s) total allowed claim(s), the duration of payments shall not be extended beyond the term set forth therein. Should the collateral be sold or refinanced, any unpaid portion of the lien shall be then due and payable.

The Plan provides for the following means of performance:

7.01.    Debtor Chuck H. Utzman will continue to generate income from residential construction consulting.

7.02.    As soon as practicable after the effective date, the Debtors shall, in a manner consistent with Exhibit A, convey an easement for uses related to sewer and utility service from the Unimproved Parcel to the Improved Parcel, of which the Improved Parcel shall be the dominant tenement and the Unimproved Parcel shall be the servient tenement.

7.03.    As soon as practicable after the effective date, the Debtors shall do one of the following based upon relative cost and/or requirements of applicable governmental unit(s):

a.    In a manner consistent with Exhibit A, adjust the lot line between the Unimproved Parcel and the Improved Parcel for purposes of access and a garage or other structure for parking exclusively used for the Unimproved Parcel; or

b.    In a manner consistent with Exhibit A, convey an exclusive easement for purposes of access and a garage or other structure for parking from the Improved Parcel to the Unimproved Parcel, of which the Unimproved Parcel shall be the dominant tenement and the Improved Parcel shall be the servient tenement.

7.04.    The Debtors may lease all or part of the Improved Parcel in order to generate rental income.

7.05.    The Debtors may complete the development of the Improved Parcel.  At any time, the Debtors may refinance or sell such property and pay encumbrances.

7.06.    The Debtors may develop the Unimproved Parcel.  At any time, the Debtors may refinance or sell such property and pay encumbrances.

7.07.    The Debtors shall commence payments to holders of allowed secured claims on the effective date of the Plan as herein set forth.

7.08.    Motions or Adversary Proceedings will be commenced within 90 days of the effective date to determine such secured amounts pursuant to Section 506 where such determination is relevant to the implementation of the Plan terms.

7.09.    Taxes on the secured tax roll secured by the properties set forth in paragraphs 5.02 and 5.04 shall be placed on a five year Plan pursuant to Statute.

7.10.    No party shall take any action against the Debtors, their assets, or assets of the estate inconsistent with the terms of the within Plan.

7.11.    The Debtors shall commence payments to the unsecured creditors on the effective date of the Plan at the monthly rate as

provided herein.    The pro-rata distributions may be made from a disbursing account on a quarterly basis.

7.12.    The Debtors shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of Final Order as required by law.  Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law.    In the event the case is converted to a case under Chapter 7, the assets shall re-vest in the Chapter 7 estate.

7.13.    Any sale or refinance of property as provided herein may be made free and clear of liens as provided in the Code.  The Court shall specifically reserve jurisdiction to implement the Plan, to approve sale of property, and to direct such sale of property free and clear of lien where necessary or appropriate.

7.14.    Debtors reserve the right to object to any claim filed in the case and to assert any and all counterclaims against any party filing such a claim.

7.15.    Should the Debtors default on their obligations to pay secured creditors pursuant to the herein Plan, such creditors may exercise non-judicial remedies pursuant to State Law after fifteen (15) days written notice is given by first class mail postage prepaid.  Such a default shall not constitute a material default under the Plan.

7.16.    Confirmation of the herein Plan shall operate as a cure of any and all pre-confirmation defaults.

7.17.    Debtors reserve rights to object to the reasonableness of any attorneys fees and charges claimed by any

secured creditor and to object to any claim of any creditor for which such creditor requests allowance.

7.18.    Debtors reserve rights to seek sanctions against any party to this proceeding or such party's attorney for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure.

The assets and liabilities of the Debtors are set forth in the Debtors' Schedules, on file with the Court.  The Proponents believe that the terms of the Plan are feasible, and that they will be able to perform under the Plan.

Dated:    4/30/15                    DAVID N. CHANDLER, p.c.


                                     By: */s/ David N. Chandler, Jr.*
                                     DAVID N. CHANDLER, JR.
                                     Attorney for Debtors



EXHIBIT "A"

UTZMAN RESIDENCE
169 Rose Avenue
Mill Valley, CA 94941

Exhibit A
Site Plan &

C. UTZMAN, P. E.
Structural Engineering   Lic. No.059487

## EXHIBIT B
## ITEMS REQUIRED FOR OCCUPANCY PERMIT

| ITEM | DESCRIPTION |
|------|-------------|
| **Renew Bld. Permit** | Requires new "as-built" drawings, $7,000 renewal fee for building permit, & $5,000 to DPW |
| **Sewer** | Re-route into street (150') after 5 year City moratorium OR Obtain easement(190') across adjacent lot. Survey & record, complete the work at the manhole & cleanouts |
| **Lot-line Adjustment** | Adjust lot-line per approved plans OR apply for Variance on rear set-back (Max. lot size as constructed is 14,000 s.f.) |
| **Engineering** | Obtain letters of approval for completed Soils, Civil,& Structural work |
| **Fire Sprinklers** | Run supply line to Garage, complete the trim-out, install alarm bell, test system |
| **Plumbing** | Remove electric water heaters. Convert 2 stoves, furnace, dryer, and fireplace to natural gas, sewer cleanouts |
| **Clean-up adjacent lot** | Remove silt fence & stockpiled soil, cleanup debris pile |
| **Trellis** | Add 4' x 15' panels at four locations |
| **Window latches** | Obtain & install missing handles & covers (12 locations) |
| **SGD latch at Bdrm #3** | Obtain & install missing handle and latch mechanism |
| **Second Unit** | Provide guard rail at interior landing |
| **Landscaping** | Complete slide prevention work at south retaining wall, add slide prevention at north side |
| **Final Walk-Through & Approvals*** | Walk-through and punchlist completion from City Building Dept., Planning Dept., Public Works, Fire Dept. |
| ***  Possible Punch-list Issues** | Deck rail's height at Planters, vent location for furnace, guard-railing/handrail at second unit platform, earth wood clearance at exterior deck landings, size/ground clearance for storage platforms, landscaping(mainly tree size), brush clearing behind house, sewer line size |

EXHIBIT "B"

## **EXHIBIT B**
## **COSMETIC ITEMS REQUIRED FOR SALE**

| ITEM | DESCRIPTION |
|---|---|
| **Elevator Repair** | Mechanical adjustment(occassionally stalls), needs jamb extension, secure door safety locks (sticking), plumbing needs corrosion protection, replace backup power units. |
| **Deck Leak Repair** | Locate & repair possible deck leak above second unit Bath |
| **Electrical** | Repair dead outlets at misc. locations |
| **Plumbing** | Connect kitchen water filter, provide water for drip irrigation at second unit, fix slow drains at bathrooms, install shower drain trim in M.Bath |
| **Window Screens** | Replace concealed screen at LvRm SGD (torn) |
| **Door hinges** | Complete hinge installations at misc. locations |
| **Interior Paint touchup** | Misc. re-painting at stairwells, complete Garage walls |
| **Interior Trim** | Minor touchup |
| **Floor scratch repair** | Misc. locations |
| **Brush Clearing** | Remove Scotch Broom around house (MVFD may require this when they inspect) |
| **Ext. paint** | Misc. punchlist |
| **Tile** | Complete grouting at misc. baseboard loc. |

LIQUIDATION ANALYSIS

(Exhibit C)

| Property | Value | Secured Debt | | Equity |
|---|---|---|---|---|
| 169 Rose Ave.<br>Mill Valley, CA<br>APN 027-252-51 | $1,300,000 | $1,978,493.29 | | 0 |
| Marin County<br>APN 027-252-52<br>Mill Valley, CA | $125,000 | $237,492.84 | | 0 |
| Wells Fargo DIP acct.<br>(Business) | $6,780.18 | $0 | | 6,780.18 |
| Wells Fargo DIP acct.<br>(Social Security) | $10,700.20 | $10,700.20 | (exempt) | 0 |
| Wells Fargo DIP acct.<br>(Rental) | $4,833.72 | $4,833.72 | | 0 |
| Wells Fargo DIP acct.<br>(Inheritance) | $38,921.24 | $26,925 | (exempt) | 11,996.24 |
| Household Goods &<br>Furnishings | $1,200 | $1,200 | (exempt) | 0 |
| Misc. books, records | $200 | $200 | (exempt) | 0 |
| Clothing | $500 | $500 | (exempt) | 0 |
| Jewelry | $400 | $400 | (exempt) | 0 |
| Guitars | $1,500 | $0 | | 1,500 |
| American Riviera<br>Bank stock (in trust) | $21,900 | $0 | | 21,900 |
| Shearwall fastener<br>patent | $0 | $0 | | 0 |
| 1997 Lexus ES300 | $2,200 | $700 | (exempt) | 1,500 |
| 2003 Toyota Tacoma | $4,400 | $4,400 | (exempt) | 0 |
| 1978 MGB (disrepair) | $1,200 | $0 | | 1,200 |
| Computer, printer<br>cabinet, chairs | $200 | $0 | | 200       + |

TOTAL: $45,076.42

Expenses of Administration:
Chapter 7 administrative claims                <$15,000.00>
Chapter 11 administrative claims               < 15,000.00>
            **NET AVAILABLE FOR ADMINISTRATION:**     **$15,076.42**

EXHIBIT "C"