Peter S. Muñoz (SBN 66942)
Email: pmunoz@reedsmith.com
John D. Pingel (SBN 267310)
Email:  jpingel@reedsmith.com
Tyler M. Layton (SBN 288303)
Email: tlayton@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Movant
SUNTRUST MORTGAGE, INC., its successor
and/or assigns

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>CHARLES HENRY UTZMAN and ANNA KATHRYN UTZMAN<br><br>Debtors. | Case No.: 14-31828<br>Chapter 11<br><br>**SUNTRUST MORTGAGE, INC.'S OBJECTION TO THE FIRST AMENDED DISCLOSURE STATEMENT**<br><br>Disclosure Statement Hearing:<br>Date:             September 10, 2015<br>Time:             10:00 a.m.<br>Location:        Courtroom 23<br>                       235 Pine Street<br>                       San Francisco, CA 94104<br><br>[*No hearing date set on confirmation of Plan*]<br><br>Honorable Hannah L. Blumenstiel |

# **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 1 |
| | A. The Plan Described in the Amended Disclosure Statement Cannot Be Confirmed | 1 |
| |     1. The Chapter 11 Plan Is Not Feasible on Its Face | 2 |
| |     2. The Debtors Have Not Demonstrated the Financial Means to Implement the Plan | 7 |
| | B. The Amended Disclosure Statement Lacks Adequate Information | 7 |
| III. | RESERVATION OF RIGHTS | 9 |
| IV. | CONCLUSION | 9 |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airways Water Co. v. Los Angeles County*,
  106 Cal. App. 2d 787 (1951) ...................................................................................................4

*Bartholomae Corp. v. W. B. Scott Inv. Co.*,
  119 Cal. App. 2d 41 (1953) .....................................................................................................3

*Cheda v. Bodkin*,
  173 Cal. 7 (1916) .....................................................................................................................4

*In re Diversified Investors Fund XVII*,
  91 B.R. 559 (Bankr. C.D. Cal. 1988) .......................................................................................5

*Duff v. United States Trustee (In re California Fidelity, Inc.)*,
  198 B.R. 567 (B.A.P. 9th Cir. 1996) ........................................................................................5

*In re Ferretti*,
  128 B.R. 16 (Bankr. D.N.H. 1991) .......................................................................................5, 6

*Fristoe v. Drapeau*,
  35 Cal. 2d 5 (1950) ..................................................................................................................4

*Jones v. Sanders*,
  138 Cal. 405 (1903) .................................................................................................................4

*Kellogg v. Garcia*,
  102 Cal.App.4th 796 (2002) ....................................................................................................3

*Kytasty v. Godwin*,
  102 Cal. App. 3d 762 (1980) ................................................................................................3, 4

*Leonard v. Haydon*,
  110 Cal. App. 3d 263 (1980) ................................................................................................3, 4

*In re Main Street AC, Inc.*,
  234 B.R. 771 (Bankr. N.D. Cal. 1999) .....................................................................................1

*McCarty v. Walton*,
  212 Cal. App. 2d 39 (1963) .....................................................................................................4

*Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*,
  141 B.R. 715 (Bankr. E.D. Cal. 1992) .....................................................................................5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Orr v. Kirk*,
    100 Cal. App. 2d 678 (1950) ............................................................................................3

*Owsley v. Hamner*,
    36 Cal. 2d 710 (1951) ......................................................................................................4

*In re Phoenix Petroleum Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ...............................................................................1

*Piazza v. Schaefer*,
    255 Cal. App. 2d 328 (1967) ............................................................................................4

*In re Scioto Valley Mortgage Co.*,
    88 B.R. 168 (Bankr. S.E. Ohio 1988) ...............................................................................6

*In re Silberkraus*,
    253 B.R. 890 (Bankr. N.D. Cal. 1999) .............................................................................1

*Silveira v. Smith*,
    198 Cal. 510 (1926) ..........................................................................................................3

*Tusher v. Gabrielsen*,
    68 Cal. App. 4th 131 (1998) .............................................................................................3

*Vargas v. Maderos*,
    191 Cal. 1 (1923) ..............................................................................................................3

*Warfield v. Basich*,
    161 Cal. App. 2d 493 (1958) ........................................................................................3, 4

**Statutes**

11 U.S.C. § 1123(b)(5) ..........................................................................................................1, 2

11 U.S.C. § 1125(a)(1)........................................................................................................1, 5, 8

11 U.S.C. § 1125(b) ..................................................................................................................5, 8

11 U.SC. § 1129(a)(11)..............................................................................................................1, 7

**Other Authorities**

Cal. Jur. 3d, Easements and Licenses in Real Property § 28 ........................................................3

Miller & Starr, *California Real Estate* 3d Ed. § 15:21 .................................................................4

Witkin, 12 Summary of California L., § 388 (10th ed.) ................................................................3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

SunTrust Mortgage, Inc., its successor and/or assigns ("SunTrust"), by and through its undersigned counsel, hereby files its objection (the "Objection") to the approval of the First Amended Disclosure Statement [Doc No. 97] ("Amended Disclosure Statement") and confirmation of the Chapter 11 Plan (the "Plan") [Doc No. 37] proposed by debtors Chuck H. Utzman and Anna K. Utzman (collectively "Debtors").

## I. PRELIMINARY STATEMENT

The Amended Disclosure Statement should not be approved on several grounds. First, the Plan described therein is not feasible on its face and cannot be confirmed because it violates 11 U.S.C. § 1123(b)(5) and because it proposes to restructure SunTrust's secured claim based upon illusory consideration, a fact which is also not disclosed to the creditors. Second, the Amended Disclosure Statement does not comply with 11 U.S.C. § 1125(a)(1) because it fails to provide "adequate information" to the creditors from without which they cannot make an informed decision about the Plan. The Amended Disclosure Statement, therefore, should not be approved.

## II. ARGUMENT

**A. The Plan Described in the Amended Disclosure Statement Cannot Be Confirmed**

The proposed Plan is not confirmable on its face because it is not feasible under Section 1129(a)(11) of the Bankruptcy Code. It is well accepted that a disclosure statement should not be approved when the plan described therein cannot be confirmed. *See In re Silberkraus*, 253 B.R. 890, 899 (Bankr. N.D. Cal. 1999) ("There are numerous decisions which hold that where a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan."); *In re Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). Not approving the Disclosure Statement is appropriate under those circumstances "because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed." *In re Phoenix Petroleum Co.,* 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (internal citations omitted).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**1. The Chapter 11 Plan Is Not Feasible on Its Face**

**a. The Plan Violates Section 1123(b)(5).**

The Bankruptcy Code in 11 U.S.C. § 1123(b)(5) provides that Debtors cannot modify SunTrust's rights under any plan of reorganization that Debtors might propose. That section provides that "a plan may… (5) modify rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence…"

Debtors admit in the Amended Disclosure Statement that the subject real property is their principal residence. Debtors also assert that SunTrust's collateral includes "personal property", thereby extinguishing the anti-modification protection of Section 1123(b)(5). Debtors propose to modify SunTrust's rights by requiring SunTrust to release a portion of its collateral in return for a purported sewer and utility easement over the adjacent lot also owned by them. Yet, short of a perfunctory assertion that SunTrust's collateral includes "personal property", the Amended Disclosure Statement provides no explanation how the Plan can modify SunTrust's rights contrary to the express prohibitions of Section 1123(b)(5).[1]

**b. The Plan Provides for an Impermissible Taking of SunTrust's Collateral.**

The Plan relies on two extraordinary assumptions that seriously affect SunTrust's lien and collateral. First, the Plan provides that "[a]s soon as practicable after the effective date, the Debtors shall... convey an easement for uses related to sewer and utility service from the Unimproved Parcel to the Improved Parcel…." *See* Plan § 7.02. Then, the Plan further requires that SunTrust either agree to (1) adjust the lot line between the Unimproved Parcel and the Improved Parcel, or (2) convey an easement for purposes of access and a garage or parking from the Improved Parcel to the Unimproved Parcel. *See* Plan § 7.03. The Plan requires that SunTrust's lien "be modified by making such liens expressly subject to these changes in collateral." *See* Amended Disclosure Statement, 9:23-25.

However, Debtors once again fail to explain the legal grounds whereby SunTrust can be compelled to surrender any portion of its collateral or to allow parking thereon. Debtors simply

---
[1] This issue is fully briefed in connection with Debtors' Motion for an Order Determining SunTrust's Secured Claim and pending a hearing on September 3, 2015. *See* Doc. Nos. 66 – 67, 86, 96, 102.

assert, without support, that the modification of SunTrust's collateral will "benefit SunTrust" because "the lack of an easement is one of the major hurdles for the Debtor's obtaining certificates of completion and occupancy relative to the Improved Parcel" [Debtors' Amended Disclosure Statement, 16:26-28, 17:1-3] and because the Lot Line adjustment will bring the parcel "into conformity with building regulation" [*id*. at 17:4-11]. Debtors also assert that the modification of SunTrust's collateral will avoid "hypothetical cost" associated with "litigating implied easement issues and obtaining a variance for the inadequate setback." *Id*. at 17:20-26. Debtors' unsupported claims of hypothetical contingencies and hypothetical cost-savings are not sufficient to justify taking a portion of SunTrust's collateral.

### c. SunTrust Already has an Implied Easement for Sewer and Utility Access over Lot 52.

Debtors' Plan proposes to give SunTrust an easement over Lot 52 (the unimproved lot referred to in law as the "servient tenement") for sewer and utility access for Lot 51 (the improved lot referred to in law as the "dominant tenement"). In return Debtor's Plan requires SunTrust to agree to release 7,000 square feet of Lot 52. *See* Amended Disclosure Statement 8:23-26, 9:26-10:3. However, under applicable California real property law, SunTrust <u>already has</u> an <u>implied easement</u> over Lot 52 for sewer and utility access for Lot 51.

California real property law is clear. Under certain circumstances, California law implies that the parties intended to create or transfer an easement by a grant or reservation when there is no written document evidencing their intent and, in some cases, even when there is no oral agreement regarding the easement. *See* Witkin, 12 Summary of California L., §§ 388 to 406 (10th ed.); *see also* Cal. Jur. 3d, Easements and Licenses in Real Property §§ 28 to 31. For example, if the owner of parcels A and B uses a road over parcel A for ingress and egress from a public highway to a building located on parcel B, a subsequent conveyance of parcel B by an instrument that fails to mention the road also conveys an access easement across parcel A for the benefit of parcel B. *See Silveira v. Smith*, 198 Cal. 510, 518 (1926); *Vargas v. Maderos*, 191 Cal. 1, 2 (1923); *Kytasty v. Godwin*, 102 Cal. App. 3d 762, 770 (1980); *Bartholomae Corp. v. W. B. Scott Inv. Co.*, 119 Cal. App. 2d 41, 44 (1953).

In order for a court to imply the creation of an implied easement, certain conditions must exist at the time of the conveyance. *See Tusher v. Gabrielsen*, 68 Cal. App. 4th 131, 141 (1998). First, there must be a common ownership of a parcel [*Kellogg v. Garcia*, 102 Cal. App. 4th 796 (2002)], and a transfer or conveyance of one parcel, or a portion of a parcel, to another [*Leonard v. Haydon*, 110 Cal. App. 3d 263, 266 (1980) (dictum); *Warfield v. Basich*, 161 Cal. App. 2d 493, 499 (1958); *Orr v. Kirk*, 100 Cal. App. 2d 678, 681 (1950)]. An easement may arise by implication when a landowner encumbers a part of his or her property or one of several properties he or she owns. If the quasi-dominant tenement secures a deed of trust and there is a default on the secured obligation, the purchaser at the foreclosure sale receives the title to the quasi-dominant tenement together with an implied easement over the quasi-servient tenement retained by the trustor. *See* Miller & Starr, *California Real Estate* 3d Ed. § 15:21.

Second, prior to the division of title, there must have been an existing obvious, and apparently permanent, use of the quasi-easement by the common owner. *See Jones v. Sanders*, 138 Cal. 405, 411 (1903); *Leonard,* 110 Cal. App. 3d at 266 (dictum); *Warfield v. Basich*, 161 Cal. App. 2d 493, 499 (1958).

Third, the easement must be reasonably necessary to the use and benefit of the quasi-dominant tenement. *See Leonard,* 110 Cal. App. 3d at 266; *Kytasty v. Godwin*, 102 Cal. App. 3d 762, 769 (1980); *Piazza v. Schaefer*, 255 Cal. App. 2d 328 (1967); *Warfield v. Basich*, 161 Cal. App. 2d 493, 498 (1958). "Necessary," as used in this context, does not mean that there must be a strict necessity, but merely that it is convenient for the use of the dominant tenement. *See Owsley v. Hamner*, 36 Cal. 2d 710, 717 (1951); *Fristoe v. Drapeau*, 35 Cal. 2d 5, 8, (1950); *Cheda v. Bodkin*, 173 Cal. 7, 13 (1916); *Piazza v. Schaefer*, 255 Cal. App. 2d 328 (1967); *McCarty v. Walton*, 212 Cal. App. 2d 39, 43 (1963).

These general rules applicable to the use of easements apply equally to the owner of a subsurface easement for the maintenance of pipes or other similar uses. The holder of a subsurface easement can use the subsurface for any purpose that is not inconsistent with the enjoyment of the surface use by the owner of the servient tenement. *See Airways Water Co. v. Los Angeles County*, 106 Cal. App. 2d 787, 790 (1951).

Here, Debtors acknowledge that they own both Lot 52 (the unimproved lot) and Lot 51 (the improved lot). *See* Amended Disclosure Statement, 5:24-25. Debtors acknowledge that the utilities for the Improved Parcel (Lot 52) already traverse the Unimproved Parcel (Lot 52). *See id.,* 9:6. Furthermore, Debtor's acknowledge that this situation has existed for quite some time. *Id.; see also id.,* 8:1-8. Debtors indirectly acknowledge that they knowingly and intentionally constructed the residence on Lot 51 and connected to it the sewer and other utilities over Lot 52. All of this was done for their own benefit and was reasonably necessary for the use and enjoyment of the residence on Lot 51. *See id.,* 8:7. Debtors created the implied easement, since utilities were necessary for their own use and enjoyment of the main living unit on Lot 51, the Improved Parcel. *See id.* 8:6-9.

Thus, even if the parcels were sold in the future, Lot 51, the Improved Parcel, the buyer would be entitled to the benefit of the sewer/utility easement over Lot 52, as the burden and benefits of the easement are conveyed with the land (Lot 51). Therefore, the Plan should not require any additional conveyance of a sewer and utility easement for Lot 51, the Improved Parcel, since one already exists as an implied easement which benefits SunTrust a lien holder on Lot 51.

### d. The alleged "cost savings" are of a type that cannot be considered.

Debtors appear to argue that the value of the 7,000 sq. ft. being sought by the Debtors is less than the costs to SunTrust of defending the litigation that the Debtors will file over the implied easement; and that therefore the savings (i.e. in unspent attorneys' fees) to SunTrust if the Court were to approve the Debtors' plan without the need for litigation would somehow constitute consideration for the taking of the 7,000 sq. ft. of SunTrust's collateral.

This is a very peculiar form of reasoning that SunTrust's attorneys have never encountered in a hearing regarding a Disclosure Statement. The Debtor tries to create consideration for any objecting creditor simply by threatening litigation over some point then offering to not pursue the litigation if the Court approves its plan. Voila! Consideration has now appeared where none was before. Such consideration is too artificial and bogus to be seriously considered. SunTrust has certain rights under the Bankruptcy Code including the right to its collateral. It cannot be stripped of those rights by the assertion of bogus claims which are magically converted into "consideration" when the Debtors agree not to pursue those bogus claims.

### e. The building regulations are not as large an obstacle as portrayed.

The Debtors argue that the Improved Parcel must be brought into conformance with the City building regulations (particularly the setback limitations) or else it will seriously have an adverse effect on the value of the Improved Parcel.

The Debtors once again provide very conclusory statements without much convincing back up evidence. In particular if, in fact, the City Inspectors were to determine that there is a violation of the City building codes, the Debtors overlook the ability of SunTrust as a secured creditor and (prospective) foreclosing lender would have the ability following foreclosure to seek a variance from the adverse impact of the building codes. This is especially true here where SunTrust had no involvement in the construction of the residence and the code violations.

The building codes of Mill Valley provide:

**20.64.060 Variances—Conditions governing grant of.**
When, because of special circumstances applicable to the property, including size, shape, topography, location or surroundings, the strict application of the provisions of this title will deprive such property of privileges enjoyed by other property in the vicinity and under identical zoning classification, or deprive provision of solar access, variances may be granted by the Planning Commission or Zoning Administrator as provided in this chapter; provided, however, that no variance may be granted under this title which authorizes a use or activity which is not otherwise expressly authorized by the zone regulation governing the parcel of property. Any decision granting a variance shall expressly set forth the findings of fact which support such decision. (Ord. 892 § 2; Ord. 932 § 6; Ord. 999 § 6, November 15, 1982)

**20.64.070 Variances—Application—Form—Fee.**
Application for a variance shall be made in writing on a form prescribed by the Planning Commission or the Director of Planning and Building and shall be accompanied by a fee in an amount to be fixed by resolution adopted by the City Council. The application shall be accompanied by a statement, plans, and evidence showing:

A. That there are exceptions, or extraordinary circumstances, or conditions applying to the land, building or use referred to in the application, which circumstances or conditions are peculiar to the property in question, and do not apply generally to land, buildings and/or uses in the same district.

B. That the hardship is not due to any action on the part of the applicant.

C. That the granting of the application is necessary for the preservation and enjoyment of reasonable property rights of the petitioner.

D. That the granting of such application will not under the circumstances of the particular case, affect adversely the health, comfort or safety of persons residing or working in the neighborhood of the property of the applicant and will not, under the circumstances of

the particular case, be detrimental to the public welfare or injurious to property or improvements in the neighborhood. (Ord. 788 § 5; Ord. 932 § 7, November 20, 1978)

It is apparent to SunTrust that as a foreclosing creditor it would be in a very good legal position to obtain a variance from the Building Regulations to which the Debtors are referring.

### 2. The Debtors Have Not Demonstrated the Financial Means to Implement the Plan

The Debtors' Plan claims that the costs of the completion of the improvements will be $215,585. *See* Exhibit D. The Debtors' Plan also claims that the Debtors' monthly net revenue <u>not including</u> any adequate protection payments to SunTrust Mortgage or Stewart Title Company is $9,389.00. *See* Exh. E. SunTrust has acknowledged that the monthly adequate protection payments should be $4,834.38. That leaves total net funds of $4,554.62, less any monthly adequate protection payment amount to Stewart Title, with which the Debtors can pay the $215,585 for the Improvements.

Clearly the Debtors' available monthly funds are not sufficient to make the payments required under the Plan.

### B. The Amended Disclosure Statement Lacks Adequate Information

The Amended Disclosure Statement should be also denied because it lacks adequate information for SunTrust to make an informed decision about the Plan. Prior to soliciting acceptances to a plan of reorganization, the plan proponent must receive bankruptcy court approval of a written disclosure statement containing "adequate information." 11 U.S.C. § 1125(b). The term "adequate information" is defined in Section 1125(a)(1) as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . [to enable] a hypothetical investor of the relevant class [of claims] to make an informed judgment about the plan…." Thus, the primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan. *See Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988). A disclosure statement must clearly and succinctly inform a creditor what it is going to receive under

- 7 -
SUNTRUST MORTGAGE, INC.'S OBJECTION TO THE FIRST AMENDED DISCLOSURE STATEMENT

Case: 14-31828   Doc# 107   Filed: 09/03/15   Entered: 09/03/15 13:10:48   Page 11 of 14

the plan, when it is going to receive it, and what contingencies there are to receiving a distribution. *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

While "adequate information" for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, there nevertheless is an irreducible minimum. *See Official Committee of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992). An informed judgment cannot be made without information about the plan and how the provisions of the plan will be put into effect. *Id.* at 719. The Debtors bear the burden of demonstrating that the Amended Disclosure Statement contains adequate information. *See In re Michelson*, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992).

One court has said that the disclosure statement must clearly and succinctly inform the average unsecured creditor, what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. *See In re Ferretti* 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Another court has said that the following information should be included in a disclosure statement: "(4) the source of information provided in the disclosure statement…(8) the accounting and valuation methods used to produce the financial information in the disclosure statement…(14) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan…(15) information relevant to the risks being taken by the creditors and interest holders…." *In re Scioto Valley Mortgage Co.* 88 B.R. 168 (Bankr. S.E. Ohio 1988).

Here, the Amended Disclosure Statement lacks adequate information and/or contains unclear or misleading statements about (a) the treatment of SunTrust under the Plan; and (b) other material matters.

First, the Amended Disclosure Statement does not state with sufficient specificity the time frame in which the Plan would be complete.

Second, the Amended Disclosure Statement does not adequately address SunTrust's right to an implied easement over Lot 52 (the unimproved lot) to benefit Lot 51 (the improved lot). If SunTrust has such a right, it would eliminate the consideration that Debtors propose to give to SunTrust in exchange for the lot line adjustment that is critical for Debtors' Plan to succeed.

Third, the Amended Disclosure Statement does not provide an anticipated sale price for the Project or a value when completed. The Debtors state a value for Lot 51 of $1,950,000 and a value of Lot 52 of $175,000. *See* Amended Disclosure Statement, 11:23-24. But there is no information where these values were obtained or how they were determined. Nor is there any way information on the anticipated net proceeds from a sale of the Project which would thereafter be available to the creditors.

In short, the Amended Disclosure Statement and Plan provide no reasonable basis on which to conclude that Debtors will have the funds and government approvals available to complete the Plan as proposed within a reasonable time frame, which has not been identified. While Debtors may argue that all of the discussed contingencies could in theory occur, feasible in theory is not the standard under Section 1129(a)(11) of the Bankruptcy Code. The Plan takes into account too many assumptions – SunTrust and Stewart Title's agreement to the proposed modifications, all necessary government approvals, and sufficient funding to complete the Plan within a reasonable, but unidentified timeframe. All of these assumptions only form a hypothetical plan which is not workable.

For the reasons stated above, the Amended Disclosure Statement lacks adequate information for SunTrust to make an informed judgment about the Plan, and Debtors' request to approve the Amended Disclosure Statement, therefore, should be denied.

### III. RESERVATION OF RIGHTS

SunTrust is continuing to review the Amended Disclosure Statement and reserves and preserves the right to raise additional objections to the Amended Disclosure Statement at or before the hearing on the Disclosure Statement. SunTrust also reserves and preserves all of its rights to object to confirmation of the Plan.

### IV. CONCLUSION

For the reasons set forth above, SunTrust respectfully requests that the Court deny approval of the Amended Disclosure Statement and confirmation of the Debtors' Plan. The Plan as set forth in Debtors' Amended Disclosure Statement is not feasible and does not provide for the fair and equitable treatment of SunTrust's claims, and therefore cannot be confirmed. The Amended

Disclosure Statement also fails to provide "adequate information" as defined in 11 U.S.C. § 1125(a)(1) and as required by 11 U.S.C. § 1125(b). Accordingly, Debtors' Amended Disclosure Statement should not be approved.

Dated: September 3, 2015    REED SMITH LLP

By:   /s/ Peter S. Muñoz
Peter S. Muñoz
Attorney for SUNTRUST MORTGAGE, INC., its successor and/or assigns

REED SMITH LLP
A limited liability partnership formed in the State of Delaware